(1 App. Div. 606.)

## ELLIS v. THOMPSON.

(Supreme Court, Appellate Division, First Department. February 21, 1896.)

CONTRACTS—BREACH—EVIDENCE—ADMISSIBILITY.

Parties entered into a contract whereby defendant was to continuously produce plaintiff's play, if a reasonable success attended its production. The play was produced twice only. In an action for defendant's failure to perform the contract, there was evidence that defendant failed to properly prepare his lines, that rehearsals were insufficient, and that defendant cut out parts of the play, and interpolated material of his own. Plaintiff's evidence, offered to prove that the play was well received and would have proved a financial success, was excluded. *Held*, that the question of success was for the jury, and that the evidence should have been admitted.

Appeal from circuit court, New York county.

Action by Henry Wyne Ellis against Denman Thompson for damages for breach of contract. From a judgment in favor of defendant, plaintiff appeals. Reversed.

The action was brought upon a written contract, bearing date October 2, 1884, which provided that a play entitled "Rich and Poor," written by the plaintiff for the defendant, should be produced by the defendant, at as early a date as reasonably convenient, in the United States, and in as proper a form as was consistent with the necessities of production in a first-class theater; that the defendant should pay the plaintiff $100 per week while the play was being played, until he should have paid the sum of $5,000; that the defendant should produce the play continuously, if there was a reasonable success attending its production, for the benefit of plaintiff and the success of the play, in consideration of the plaintiff's making over to the defendant, his heirs and assigns, all right and title to said play; and that the plaintiff should receive the $5,000 in full for the play and all claims thereon. It was conceded that this contract was made, and that thereafter the play was produced December 22, 1884, at Fall River, Mass., and December 23, 1884, at New Bedford, Mass., and was never produced thereafter. The plaintiff alleged in his complaint that the defendant violated the contract, in that he did not produce the play in as proper form as was consistent with the necessities of production in a first-class theater, and that he did not produce the play continuously; that it was produced without proper rehearsals having been had; that the defendant did not know his part, and was not in a proper condition to play the same, and that he changed the play in important parts, to its great detriment, cutting out parts of it, and substituting therefor material of his own composition, without the plaintiff's consent; that there were not sufficient performers in the cast to properly produce the play, and that there was no prompter present to aid its production; and that about January 1, 1885, the defendant notified the plaintiff that he would not again produce the play, or carry out the contract. This action was brought to recover $5,000, as damages for the breach of the contract. The defendant denied the allegations of the complaint as to a violation of the contract, and alleged affirmatively that the play met with no success whatever, but proved an absolute failure, and the defendant discontinued the performance thereof, as he had a right to do under the terms of the contract. The trial was had before the court and a jury. The plaintiff testified that about a week after the production of the play the defendant sent for him, and told him that he (the plaintiff) had done his work well, and the play was all right, but that he (the defendant) could not play his part, and that he would not try it again, and that he would try to sell the play. Another witness (Armstrong) testified that he met the defendant shortly after the production of the play, and said to him, "I hear that you have made a success of the plaintiff's new play," and the defendant replied, "Yes; it is a good play, but it is not in my way." The defendant testified that he cut out parts of the play, and substituted his own material, and that he did not know his lines perfectly when he produced the play. Another witness (Salsbury) testified that he was the editor and publisher of a newspaper at Fall River, Mass., when the play was produced there, and that he saw the play produced, having a seat in one of the four front rows of orchestra chairs; that he had been engaged in dramatic criticism for nearly 30 years, and that during that time he had furnished such criticisms for the press; that he wrote a criticism of this play, after it was produced, and published the same in his newspaper in Fall River. He was allowed by the court to testify further that there was a roughness and want of finish in the initial performance of the play, and that the defendant forgot his lines several times, and needed considerable prompting, and that there was a fair audience present when the play was presented. He was then asked whether the company gave evidence of having properly rehearsed the play before its production. He was also asked how the play was received by the audience, and how the newspapers treated its production, and whether the criticism was favorable or otherwise, and to state the nature of the criticism. He was also asked to state whether the actors were called before the curtain, and how many times, and whether the play was received with applause, and how often. Objection was made on the part of the defendant to the witness' answering these questions; but no suggestion was made in any of the objections that the witness was not shown to be an expert with reference to dramatic representations or dramatic criticisms. The court sus-

tained all these objections, and the plaintiff excepted. At the close of the evidence the defendant moved for a dismissal of the complaint on the ground that the $5,000 was only to be paid at a rate of $100 a week, on the condition that the play was a success, and the plaintiff had failed to prove that the play was a success. The court granted this motion, and the plaintiff excepted.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Waldorf H. Phillips, for appellant.
A. H. Hummel, for respondent.

WILLIAMS, J. The contract required the defendant to produce the play in as proper form as was consistent with the necessities of production in a first-class theater. He was under obligations to give the play a fair trial, and do what he could to make it reasonably successful. If he failed to do this, he violated the contract, and rendered himself liable for the $5,000, even if the play, in his hands, did not prove to be reasonably successful. If the failure of the play to be successful was due to the defendant's own neglect of duty, he should not be heard to allege such failure, to defeat the plaintiff's right to recover the purchase price thereof. Gallagher v. Nichols, 60 N. Y. 438–448; Risley v. Smith, 64 N. Y. 576. The play was produced only twice. Its success or failure could hardly be determined from so slight a trial. The success referred to in the contract was evidently such success as would put money in the defendant's pocket. The first two presentations of the play might not, of themselves, have been financially successful; but the play was evidently a good one, and had real merit. For the purpose of showing that the play would finally be a financial success, the plaintiff offered to prove how, on these two presentations, it was received by the audience,—whether there was applause, and how often; whether the actors were called before the curtain, and how many times; and how the play was received by the people, as evidenced by newspaper and dramatic criticisms. Nothing of this kind would the court permit. It did appear that the defendant materially changed the play; that he struck out some parts of it entirely, and substituted his own material for other parts; that he did not properly commit his lines, or study or act his own part; and that the rehearsals were hardly sufficient. Nevertheless, the plaintiff desired to show that, even under these adverse circumstances, the play was so well received as to indicate it would be a financial success. This was clearly proper evidence. It was for the jury to say whether the play was a success, or would have been but for the neglect of duty on the part of the defendant to properly prepare and present it on the two occasions when it was produced, or if he had not then abandoned the play, and refused to continue its further production. The court excluded competent evidence offered by the plaintiff on this subject, and then dismissed his complaint for want of proof.

We think the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide event. All concur.